**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Mansfield,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-24-00182-TUC-AMM (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Stephanie Mansfield seeks judicial review of a final decision by the Commissioner of Social Security. (Doc. 1.) This matter was referred to Magistrate Judge Bruce G. Macdonald for a report and recommendation and has been fully briefed. (Docs. 22, 24, 27, 30.) Based on the administrative record (AR) and the parties' briefs, the Magistrate Judge recommends that the District Court, upon its independent review, deny Plaintiff's complaint and close this case.

## PROCEDURAL HISTORY

On May 7, 2018, Stephanie Mansfield filed an application for disability insurance benefits under Title II of the Social Security Act (SSA). (AR 296.) Plaintiff alleged she had been disabled and unable to work since December 14, 2016, due to spinal issues, fibromyalgia, and chronic migraines. (AR 301.) Prior to December 2016, Plaintiff worked in various roles at a Fry's grocery store. (AR 662.) Plaintiff's disability application was denied upon initial review, (AR 311), and upon reconsideration, (AR 325). After denial of her reconsideration request, Plaintiff requested a hearing before an administrative law

judge (ALJ). (AR 385.)

**Administrative Hearing**

On September 20, 2022, Plaintiff's administrative hearing was held. (AR 267.) Plaintiff was represented by counsel and testified on her own behalf. (AR 267-95.) In a decision denying benefits, the ALJ found Plaintiff had the severe impairment of spine disorder and the medically determinable impairments of headaches, fibromyalgia, and depression. (AR 31-32.) The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work with limitations. (AR 35.) He also found that she had the ability to perform her past relevant work as a customer service representative and a cashier. (AR 42.) The ALJ concluded Plaintiff was not disabled under the SSA. (AR 43.) The Appeals Council denied Plaintiff's request for review. (AR 1.)

**District Court Complaint**

On April 1, 2024, Plaintiff filed the complaint at hand asserting the ALJ's decision was erroneous and not based on substantial evidence. (Doc. 1 at 2.) On May 31, 2024, the Commissioner filed the administrative record. (Docs. 13-15.) On September 3, 2024, Plaintiff filed her opening brief. (Doc. 22.) On September 19, 2024, the matter was referred to the undersigned Magistrate Judge. (Doc. 24.) The Commissioner filed its answering brief on October 31, 2024, (Doc. 27); and on December 9, 2024, Plaintiff filed her reply, (Doc. 30). This Report and Recommendation follows.

**BACKGROUND**

Born on April 21, 1968, Plaintiff was fifty years old when she filed for disability insurance benefits. (AR 296.) She attended high school up to her senior year but did not graduate or obtain a general equivalency diploma. (AR 1259.) From 2006 to December 2016, Plaintiff worked at Fry's grocery store as a cashier and a customer service representative. (AR 662.) In 2010, Plaintiff had spine fusion surgery, after which she began to experience severe headaches. (AR 642, 866) By December 2016, Plaintiff had been terminated from Fry's for theft and had occasionally missed work due to intermittent residual pain from her surgery. (AR 857-58.) Plaintiff has not sought employment since.

(AR 270-71.) Plaintiff has three adult children. (AR 1187.) As of September 22, 2022, Plaintiff reported living with her ex-husband and an adult daughter. (AR 176-77.)

## CLAIM EVALUATION

An administrative law judge employs a five-step process to evaluate disability claims. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). The burden of proof is on the claimant at steps one through four. *Id*. To demonstrate a disability, the claimant must show that: (i) she is not working; (ii) she has a severe mental or physical impairment; (iii) the impairment meets or equals the requirements of a listed impairment under the SSA, and; (iv) she has an RFC that precludes her from performing her past work. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Ford*, 950 F.3d at 1148-49. At step five, the burden shifts to the ALJ to show that "the claimant can perform a significant number of other jobs in the national economy." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). This five-step determination is based upon the claimant's RFC, age, work experience, and education. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). If the ALJ conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

## ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements for disability insurance benefits through December 31, 2021.[1] (AR 31.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of December 14, 2016. (*Id*.) At step two, the ALJ found Plaintiff to have the severe impairment of spine disorder and the medically determinable impairments of headaches, fibromyalgia, and depression. (AR 31-32.) At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination with other impairments, were disabling. (AR 35.) The ALJ next determined that Plaintiff had the RFC to perform light work with limitations. (*Id*.) In assessing Plaintiff's RFC, the ALJ found that her symptom

---

[1] To be eligible for disability insurance benefits, an individual must be "fully insured" and meet specific quarters of coverage (QCs) requirements. 20 C.F.R. § 404.130.

statements were not entirely consistent with the medical evidence and other evidence in the record. (AR 36.) At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a customer service representative and a cashier. (AR 42.) The ALJ concluded that Plaintiff was not disabled at any time from her alleged disability onset date of December 14, 2016, through December 31, 2021, the date of last insured. (AR 43.)

## LEGAL STANDARD

Federal court review of social security determinations is limited. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A district court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence is more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The threshold for substantial evidence "is not high," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), and it "is an extremely deferential standard," *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021). If the evidence can support either party, the court may not substitute its judgment for that of the ALJ. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ is responsible for resolving conflicts in the testimony, determining credibility, and resolving ambiguities in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

## DISCUSSION

Plaintiff asserts the ALJ erred because (i) he failed to consider her depression a severe impairment, and (ii) he improperly discounted the opinions of two treating providers in his disability analysis. (Doc. 22 at 5-12.) Plaintiff requests that the Court overturn the Commissioner's decision and remand the matter for payment of benefits. (*Id*. at 14.) The Court finds that the ALJ supported his severity determination with substantial evidence and that he properly rejected the check-off recommendations of two of Plaintiff's treating providers. Accordingly, Plaintiff's complaint should be denied and her appeal dismissed.

## I.      Step Two: Severity Determination

At step two of the disability analysis, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996). An impairment is severe if it "significantly limits [an individual's] physical or mental ability to do basic work activities." *Taylor v. Astrue*, 661 F. Supp. 2d 1184, 1191 (E.D. Wash. 2009) (citing 20 C.F.R. §§ 404.1520(c) and 4160920(c)). To establish a medically severe impairment, the claimant must prove the existence of a physical or mental impairment by providing "medical evidence consisting of signs, symptoms, and laboratory findings." *Id*. at 1191 (citations omitted). The claimant's own subjective symptom testimony alone will not suffice. *Id*. at 1191-92 (citations omitted). The fact that a medically determinable condition exists does not automatically mean the symptoms are severe or disabling under the Social Security regulations. *Id*. at 1192. When reviewing a severity determination, the court must affirm the ALJ's conclusion so long as he offered substantial evidence as support. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

### A.      Severity Determination Supported by Substantial Evidence

At step two, the ALJ determined that Plaintiff suffered from the severe impairment of spine disorder and the medically determinable impairments of headaches, fibromyalgia, and depression. (AR 31-32.) The ALJ found Plaintiff's depression to be "nonsevere" because it "did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (AR 32.) The ALJ supported his severity determination with substantial evidence that included: (i) an unremarkable psychological examination on January 31, 2019, by Dr. Noelle Rohen, (AR 32); an unremarkable treatment note on September 20, 2019, by Dr. Christian Moher, (AR 33); a normal psychiatric examination on September 25, 2019, by Dr. Katie Artz, (AR 33); an unremarkable physical examination on November 6, 2019, by Dr. Artz, (AR 33); an inconsistent psychiatric assessment on February 25, 2020, by Nurse Practitioner (NP) Theresa Keane, (AR 33); improved psychiatric symptoms at a June 9, 2020 follow-up appointment with NP Keane, (AR 33);

Plaintiff's explicit interest in being prescribed Methadone, (AR 33); Plaintiff's failure to attend follow-up psychiatric appointments, (AR 33); Plaintiff's improved mood as noted by NP Keane in a December 17, 2020 progress note, (AR 33); an inconsistent progress note from Dr. Moher on May 26, 2021, (AR 33); and an inconsistent progress note by Physician Assistant (PA) Haley Smallwood on September 13, 2022, (AR 33).

The ALJ also utilized the Commissioner's suggested technique for evaluating mental disorders to determine the severity of Plaintiff's depression. (AR 34); *see also* 20 C.F.R. § 404.1520(a); (AR 34). The ALJ considered the four broad areas of Plaintiff's mental functioning and discussed each area individually. (AR 34.) He determined that Plaintiff had no limitation in three of the four areas and had "mild limitation" in the functional area related to concentrating, persisting, or maintaining pace. (*Id.*) The ALJ buttressed his severity determination with the opinions of two psychological consultants who concluded Plaintiff did not have a severe mental impairment. (AR 35; 304, 336) As such, the ALJ's severity determination of Plaintiff's depression was supported by substantial evidence and Plaintiff's argument on the matter should be denied.

### 1. **Harmless Error Applies**

Even if the ALJ made an erroneous severity determination at step two, harmless error would apply. If an ALJ misses a severe impairment at step two of the disability analysis, the error is harmless if the ALJ continues the evaluation and considers the impairment in his subsequent RFC determination. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding any error by the ALJ for omitting bursitis from his severity determination was harmless because the ALJ discussed the condition extensively at step four of the analysis). Here, any severity determination error by the ALJ was harmless because he continued the disability analysis past step two and considered Plaintiff's depression in his RFC determination. (AR 36-42.) In considering Plaintiff's depression in his analysis, the ALJ noted a September 13, 2022 office visit where Plaintiff's attention, concentration, and memory were grossly intact, (AR 37; 1203); a May 26, 2021 progress note that indicated Plaintiff was not in acute distress, she was pleasant and talkative with

normal speech, she was awake/alert, and she had no depression or anxiety, (AR 37; 1040); a December 17, 2020 psychiatric assessment that noted Plaintiff's symptoms did not affect her ability to function in any of the listed domains including daily living activities, finances, housing, recreational activities, relationships, self-esteem, and work, (AR 37; 1273); and a June 2, 2022 unremarkable physical evaluation that found Plaintiff's speech normal in rate, tone, and volume, and that she had good spontaneity and logical and linear thought processes, (AR 37; 1102). Accordingly, even if the ALJ erred in his depression severity finding, the error was harmless, and Plaintiff's first argument for remand should be denied.

### 2. Counterarguments Unpersuasive

In addition to finding the ALJ's severity determination of Plaintiff's depression was not erroneous, the Court finds Plaintiff's arguments to the contrary unpersuasive. Plaintiff argues that the ALJ erred in his severity determination because (i) she was diagnosed with major depressive disorder (MDD) by four separate treating providers from three different facilities; (ii) the functional limitations expressed by two providers were consistent with her symptom testimony; (iii) the reason she lost her job is tied to her mental impairment according to one provider; (iv) there is no requirement that the criteria for MDD be observed during an examination; (v) her testimony and the opinions of two providers establish her depression as a severe mental impairment; and (vi) the ALJ's failure to assign any limitation to her depression was not harmless error. (Docs. 22 at 7-8; 30 at 1-3.)

Plaintiff's argument that she was diagnosed with MDD by four separate providers is unavailing because a MDD diagnosis alone is insufficient to demonstrate that a medially determinable impairment is "severe" under Social Security regulations.[2] *Reutov v. Colvin*,

---

[2] The records underlying Plaintiff's multiple MDD diagnoses assertion are inconclusive. The first medical record is a March 22, 2020 mental RFC assessment completed by NP Keane, which states that Plaintiff is "struggling with [a] severe major disorder that is debilitating." (AR 1017.) The second record is a May 30, 2018 progress note by Dr. Eun Min Lee from Tucson Family Practice that lists MDD as one of nine medical diagnoses. (AR 699.) It is unclear whether the diagnosis was copied and pasted from previous progress notes at the same practice. (*See e.g.*, AR 713.) The third record is a May 29, 2019 progress note by NP Mary Kelley, from the same Tucson Family Practice as Dr. Lee, that lists MDD as one of roughly twenty medical diagnoses. (AR 957-58.) The fourth record

31 F. Supp. 3d 1139, 1143 (E.D. Wash. 2014) (citing *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985)).  Other courts in this circuit have rejected similar arguments.  *See Sevier v. Colvin*, No. 1:12-CV-01717, 2014 WL 1247369, at *5 (E.D. Cal. Mar. 25, 2014).

Plaintiff's second, third, and fifth arguments, which rely on various opinions of medical providers, are unpersuasive because the ALJ properly discounted the opinions.[3] (AR 40-42.)  An ALJ properly discounts a provider's opinion when there is substantial evidence that the opinion is unsupported and inconsistent.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Additionally, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Furthermore, conflicts in the medical evidence and credibility determinations are for the Commissioner to resolve, not the Court.  *Treichler*, 775 F.3d at 1098.

Plaintiff's fourth and fifth arguments, which rely on the premise that the ALJ improperly discounted her subjective symptom testimony, are belied by the ALJ's specific, clear and convincing reasons rejecting Plaintiff's depression-related symptom statements.  (*See, e.g.*, AR 36-37.)  When a claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged, and the record fails to contain evidence of malingering, the ALJ can reject the claimant's testimony about

---

is a September 13, 2022 visit summary by PA Smallwood that indicates MDD and opioid dependence as Plaintiff's sole diagnoses. (AR 1204.)  PA Smallwood endorsed NP Keane's March 22, 2020 mental work tolerance recommendation, albeit over three years later, which Plaintiff uses as the first document to support her assertion. (*See* AR 52.)

[3] The ALJ rejected NP Keane's March 22, 2020 recommendation in his decision. (AR 41-42.) PA Smallwood endorsed the same recommendation five months later. (AR 52.) The Appeals Council considered Smallwood's endorsement and found that it did not relate to the period at issue. (AR 2.) This Court examined the same evidence and concludes that considering the record as a whole, the ALJ's disability determination is supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 (9th Cir. 2007) (reiterating that under similar circumstances, the court "consider on appeal both the ALJ decision and the additional material submitted to the Appeals Council").

the severity of her symptoms by offering "specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The findings must be specific enough to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The Court concludes that the ALJ's depression-related subjective symptom findings meet these requirements. (*See* AR 36-37.)

Plaintiff's sixth and final argument is equally unavailing. She argues that the ALJ's severity determination was not harmless error because the ALJ failed to assign any depression-related functional limitation to her ability to work. (Doc. 30 at 2.) Plaintiff conflates the standard by which the ALJ's severity determination is reviewed. So long as the ALJ's severity determination is supported by substantial evidence, this Court is precluded from supplanting its opinion for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). As mentioned above, the ALJ supported his depression-related severity determination with substantial evidence. The ALJ also considered Plaintiff's depression in his RFC calculation. (AR 36-42.) As such, the ALJ did not err in his severity determination, and Plaintiff's arguments to the contrary should be denied.

## II.  Provider Opinions Properly Rejected

An ALJ may discount a treating provider's opinion by offering substantial evidence that the opinion is unsupported and inconsistent. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The ALJ must articulate how persuasive he finds the opinion and explain how he considered the supportability and consistency factors in reaching his finding. *Id.* "Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with the evidence from other medical and nonmedical sources." *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (cleaned up). While a medical opinion generally cannot be rejected solely because it is in check-box form, it can be rejected if it is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). A conflict between treatment

notes and a treating provider's opinion and inconsistencies between the opinion and the claimant's daily activities may also constitute adequate reasons to discredit the opinion of a treating physician or another treating provider. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (ruling that a conflict between the treatment notes and a treating provider's opinion can be an adequate reason to discredit the opinion); *Delgadillo v. Comm'r of Soc. Sec. Admin.*, 641 F. Supp. 3d 663, 671 (D. Ariz. 2022) (ruling that inconsistent daily activities constituted substantial evidence to reject the treating provider's opinion). The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Plaintiff argues that the ALJ's determination that the opinions of Dr. Moher and NP Keane were unpersuasive was not supported by substantial evidence. (Doc. 22 at 10-12.) The Court disagrees.

**A.     Dr. Moher**

The ALJ rejected Dr. Moher's April 13, 2020 work tolerance recommendation that Plaintiff was incapable of even part-time sedentary work because it was inconsistent with other medical evidence, including Dr. Moher's own treatment records, and unsupported. (AR 41-42.) In terms of consistency, the ALJ observed that sixty days prior to Dr. Moher's severely limiting recommendation, Dr. Moher drafted a progress note indicating Plaintiff was in no acute distress, her musculoskeletal system was normal, and she had a smooth gait with an equal stride and a good base of support. (AR 41; 997-98.) Dr. Moher also noted that Plaintiff's upper and lower extremities were normal, she had a full range of motion, her muscle strength was five out of five, and that she had normal neurological functioning with intact sensation of fine touch, pain, and temperature. (*Id.*)

The ALJ also observed that Dr. Moher's recommendation was inconsistent with the November 6, 2019 "light work/activity" recommendation given by Plaintiff's hernia surgeon, Dr. Katie Artz, (AR 41; 979), and with a June 15, 2022 progress note from NP Mandy Neblett that indicated Plaintiff was in no acute distress, had a full range of motion,

and had normal strength in her upper and lower extremities, (AR 41; 1188). The ALJ further noted that on June 15, 2022, Plaintiff stated her current medications were helping to keep her active and functional throughout the day. (AR 41; 1189.)

In terms of supportability, the ALJ noted that there was nothing in Dr. Moher's February 12, 2020 physical examination that limited Plaintiff to lifting/carrying no more than 10 pounds, especially in view of the remaining unremarkable examination notes given that day. (AR 41.) The ALJ's reasons for rejecting Dr. Moher's unsupported check-off recommendation constitute relevant evidence that a reasonable mind might accept as adequate to support his conclusion. Accordingly, the ALJ did not err in discounting Dr. Moher's opinion, and Plaintiff's arguments to the contrary should be denied.

### B. Nurse Practitioner Keane

The ALJ also rejected NP Keane's March 22, 2020 check-off mental work tolerance recommendation, which indicated Plaintiff was "[m]arkedly [l]imited" in several mental functioning domains because it was inconsistent with other medical evidence, including Keane's own treatment records, and unsupported. (AR 40-41.) In terms of consistency, the ALJ noted that Keane's treatment notes from three months prior indicated that Plaintiff's symptoms did not affect her ability to function in any of the listed domains including daily living activities (ADLs), recreational activities, relationships, sexual activity, finances, and work. (AR 40; 1273.) The ALJ concluded that Plaintiff's ability to do her finances undermined Keane's assessment that Plaintiff could not understand, recall, or execute even simple instructions. (AR 40; 1259; 1266; 1273.)

The ALJ also observed that medical progress notes drafted by Dr. Artz prior to Keane's recommendation suggested that Plaintiff did not have severe mental problems. (AR 40; 981; 985.) The ALJ noted that psychological examinations done after Keane's recommendation failed to suggest that Plaintiff's psychological impairments were as severe as Keane opined and indicated that Plaintiff did not have severe mental impairments. (AR 41; 1102; 1198-1204.) The ALJ added that on January 31, 2019, a psychological examiner concluded that Plaintiff's adjustment disorder with depressed mood did not limit

any of her "B criteria" domains.[4] (AR 41; 857-61.) The ALJ highlighted the fact that Plaintiff left her most recent job due to theft and not performance-related reasons. (AR 41.) The ALJ's reasons for rejecting NP Keane's check-off recommendation constitute relevant evidence that a reasonable mind might accept as adequate to support his conclusion. As such, the ALJ did not err in discounting Keane's opinion, and Plaintiff's arguments to the contrary should be denied.

### 1. Counterarguments Unpersuasive[5]

In addition to finding the ALJ properly rejected the recommendations of Dr. Moher and NP Keane, the Court finds Plaintiff's arguments to the contrary unpersuasive. Plaintiff argues the ALJ erred in finding the opinions of Dr. Moher and NP Keane unpersuasive because (i) he improperly credited the opinions of non-examining providers; (ii) he ignored medical records that supported Keane's recommendation; (iii) he relied on the absence of observed psychiatric problems to discount the opinions; (iv) he mischaracterized treatment notes to discount Keane's opinion; (v) the reason Plaintiff left her last position is irrelevant to the disability analysis; (vi) he was not able to assess PA Smallwood's opinion; and (vii) he cherry picked parts of the record to discount Dr. Moher's opinion. (Doc. 22 at 10-12.) The Court addresses each of these arguments individually.

#### a. New Evaluation Regulations Support Finding

Plaintiff's first argument is unavailing because the extent of the doctor's relationship with the claimant is no longer the most relevant factor when evaluating the persuasiveness

---

[4] "Paragraph B criteria … requires that a claimant's mental disorder result in extreme limitation of one, or marked limitation of two, of the four areas of mental functioning." *E.M. v. Kijakazi*, 591 F. Supp. 3d 595, 606 (N.D. Cal. 2022) (cleaned up).

[5] The Court declines to address the new arguments and evidence Plaintiff includes in her reply brief. (*See* Doc. 30 at 3-7); *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)) ("It is well established that new arguments and evidence presented for the first time in [r]eply are waived.); *Wallace v. Countrywide Home Loans, Inc.*, No. CV 08-146, 2009 WL 4349534, at *7 (C.D. Cal. Nov. 23, 2009) ("A district court may refuse to consider new evidence submitted for the first time in a reply if the evidence should have been presented with the opening brief.").

of a provider's opinion. *Woods,* 32 F.4th at 791. Rather, supportability and consistency are the most important factors. *Id.* Plaintiff insinuates that because the ALJ found the opinions of non-examining providers to be persuasive, he somehow failed to make a disability determination based on the record as a whole. (Doc. 22 at 10.) This insinuation is belied by the ALJ's actual analysis of the prior administrative medical filings, which he supported with September 13, 2022 treatment records from PA Smallwood. (AR 35.) The ALJ also supported his endorsement of the prior administrative medical findings with a thorough analysis of the supportability and consistency of the findings. (*Id.*) As such, Plaintiff's argument that the ALJ constrained his review of the medical records to support the prior administrative findings is unavailing.

### b.  Individual Record Analysis Unnecessary

Plaintiff next argues that the ALJ erred in discounting Keane's recommendation because the ALJ neglected to discuss some of Keane's records that supported her position. (Doc. 22 at 10.) However, the ALJ is not required to list every medical record to support the rejection of a provider's opinion. *Carrillo v. Comm'r of Soc. Sec.*, No. 1:22-CV-00428, 2023 WL 5155866, at *4 (E.D. Cal. Aug. 10, 2023) (citing 20 C.F.R. § 404.1520c(b)). Instead, the ALJ must provide an analysis addressing the opinion's supportability and consistency supported by substantial evidence to reject the opinion. *Id.* at *5. The ALJ provided a thorough analysis addressing supportability and consistency when rejecting NP Keane's recommendation. As such, he did not err by failing to address each and every one of Keane's records in his analysis.

### c.  Opinion Discounted By Substantial Evidence

Plaintiff next argues that the ALJ relied on the absence of observed psychiatric problems during NP Keane's evaluations to find her opinion unpersuasive. (Doc. 22 at 10.) If a treating provider's opinion is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. *Ghanim*, 763 F.3d at 1162. Here, the ALJ determined that the Plaintiff's statements regarding the alleged intensity, persistence, and limiting effects of

her depression-related symptoms were inconsistent with the evidence of record. (AR 37.) Plaintiff's argument also goes against settled case law that instructs a claimant cannot demonstrate a severe medical condition based on her subjective pain testimony alone. *See Taylor*, 661 F. Supp. 2d at 1191-92. The ALJ rejected Keane's recommendation because it was inconsistent with her own medical records, the psychological examinations of other providers, and unsupported by other relevant evidence in the record. (AR 40-41.) These reasons constitute substantial evidence to reject Keane's recommendation.

### d.     Mischaracterization Harmless Error

Plaintiff next argues the ALJ erred by mischaracterizing a provider's progress note to discount Keane's recommendation. (Doc. 22 at 11.) In a December 17, 2020 diagnostic note, Keane wrote that Plaintiff's pain was "inextricably linked to her many psychiatric complaints/symptoms." (AR 1272.) From this observation, the ALJ surmised that Plaintiff's mental complaints were secondary to her pain. (AR 41.) The Court did not include this observation in its conclusion that the ALJ used substantial evidence to reject Keane's recommendation. As such, any error the ALJ committed by making the observation was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (reiterating that an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion").

### e.     ALJ May Draw Logical Inferences

Plaintiff next argues that the ALJ erred by highlighting the fact that Plaintiff left her most recent job for reasons unrelated to her alleged disability. (Doc. 22 at 11.) In rejecting Keane's recommendation, the ALJ noted that Plaintiff was fired from her job in 2016 for theft and not for performance-related reasons. (AR 41.) This statement may have been used to highlight inconsistencies or the lack of supportability in Keane's medical analysis. In the paragraph preceding the ALJ's comment, he reviewed Keane's treatment notes. (*See* AR 41.) In a February 25, 2020 treatment note, which was part of the exhibit the ALJ reviewed, (Exhibit 31F, AR 1258), Keane observed that Plaintiff had instances of high-risk

behavior including "shoplifting cash" from Fry's. The ALJ may have given a reasonable deduction that Plaintiff was terminated from her position for theft, and not for high-risk behavior associated with her depression as Keane surmised. The ALJ's logical inference, in the context of discounting Keane's recommendation, was not in err. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (instructing that an ALJ is entitled to draw inferences logically flowing from the evidence in reaching his findings).

### f. Substantial Evidence Supports Disability Determination

Plaintiff next argues that the ALJ erred by failing to assess PA Smallwood's endorsement of NP Keane's work tolerance recommendation. (Doc. 22 at 11.) The Court may consider additional medical evidence submitted after the ALJ's disability determination if the Appeals Council addressed the evidence in the context of denying the claimant's request for review. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) ("[W]e consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council"); *Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir.2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."). It appears that PA Smallwood endorsed NP Keane's March 20, 2020 mental work tolerance recommendations a little over three years after they were initially issued. (AR 52.) This additional evidence was considered by the Appeals Council in the context of denying Plaintiff's request for review. (AR 2.) In light of Smallwood's additional endorsement of an unsupported check-off recommendation, the Court comes to the same conclusion in terms of the ALJ's overall disability finding, which is that the ALJ properly discounted the same recommendation with substantial evidence. As such, Plaintiff's argument that the ALJ erred by failing to assess PA Smallwood's endorsement of Keane's recommendation should be denied.

### g. Substantial Evidence Supports Recommendation Rejection

Plaintiff's final argument is that the ALJ erred by cherry picking parts of the record to explain why he did not find Dr. Moher's recommendation persuasive. (Doc. 22 at 11.) As previously mentioned, Dr. Moher issued medical work tolerance recommendations that

were conclusory, brief, and inconsistently supported. (AR 1018-19.) The ALJ proffered substantial evidence to reject the recommendation that included his analysis on the opinion's supportability and consistency. (AR 41-42.) As such, Plaintiff's argument that the ALJ erred by cherry picking the record to refute Dr. Moher's recommendation should be denied.

## RECOMMENDATION

The Magistrate Judge recommends that the District Court, upon its independent review, deny Plaintiff's complaint, (Doc. 1), and affirm the Commissioner's final decision. Under the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days of being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The responding party shall have seven (7) days after being served with a copy of the opposing party's written objections to file a response. No replies shall be filed unless leave is granted by the District Court. If objections are filed, the parties shall use the following case number: **24-CV-182-AMM**. Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 24th day of February, 2025.

Honorable Bruce G. Macdonald
United States Magistrate Judge